PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. CARLOS MANUEL BENJAMÍN, Defendant and Appellant.

No. 4699. Argued November 15, 1932—Decided January 20, 1933.

*Felipe Colón Díaz* and *R. Hernández Matos* for appellant. *R. A. Gómez, Fiscal,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Carlos Manuel Benjamín was prosecuted for the crime of involuntary manslaughter, committed as follows:

". . . one day in October, 1930, and in the Municipality of Ponce, Puerto Rico, which forms part of the judicial district of the same name, unlawfully and wilfully and while driving a motor vehicle, an automobile, without a license therefor, he drove the said automobile with such negligence, carelessness, and unskillfulness, that he ran over Juana Bautista Ortiz Candelario, a human being,

causing her injuries which were the unlawful cause of the death of the said Juana Bautista Ortiz Candelario.

"The negligence, carelessness, and unskillfulness in this case consisted in that the defendant was driving the said automobile on the left side of the road instead of the right, at an excessive rate of speed."

The defendant pleaded not guilty and asked that he be tried before a jury. The trial was held. The jury found the defendant guilty and the court sentenced him to six months' imprisonment in the penitentiary. Feeling aggrieved he took the present appeal. As an only error he urges the insufficiency of the evidence. The *Fiscal* of this Court confesses error.

Although we admit that the evidence is confusing and difficult to weigh, we are of the opinion that it cannot be maintained that the same is so deficient as to justify the conclusion that it afforded no basis for the jury to render a verdict or for the court to enter its judgment.

The first witness to take the stand was Bienvenido Torres.

He said that "an automobile was coming from Pastillo to Ponce; that an old woman was crossing the road; the automobile blew the horn and then the old woman went across the road; while the woman was crossing the road, the automobile hit a tin can that she was carrying and she fell to the ground." The road is "straight and rather wide."

Questioned as to the place where the old woman was, he answered: "The old woman was towards the left; she was walking towards the center of the road, and then the automobile, which was traveling on the right side, blew the horn, and swerved in order not to run over her; and then it hit the tin can and the old woman fell to the ground."

To other questions he answered: "There was plenty of road to allow the automobile to pass. Yes, if he had driven over part of the gutter he could have passed. She was coming from Peñuelas to Ponce. The car was traveling in the opposite direction. The old woman was coming from the

right, there are some houses there, and intended to cross to the left. I cannot tell about the speed because I know nothing about automobiles, but it looked as if it were traveling slowly. It stopped at a distance of about ten or twelve yards. The boy (the chauffeur), was driving to the right. He hit the old woman towards the middle of the road. To the left, towards the middle of the road. He struck her with the rear right mudguard, from here to there; the left one, from here to there. The driver blew the horn. The old woman kept on crossing; she did nothing, just as if she were crossing on a straight line. When the boy noticed that he was in front of the old woman, he swerved the car to one side. Towards the left. He fell in the gutter. The car came to a stop somewhat crosswise. The old woman was traveling through the middle of the road. The automobile swerved to the left. It hit her with the mudguard. With the one to his right; towards the rear.''

The prosecuting attorney then presented in evidence a certificate of the Commissioner of the Interior, showing that according to the records of the Automobile Division of his Department, the defendant does not appear to have been authorized to drive motor vehicles over the roads of Puerto Rico.

Then follows the testimony of Pedro Juan Santiago, who did not see the accident. On October 6, 1930, at about 5 o'clock in the afternoon, he heard from his house that some one was yelling; he went out to the highway and saw that they had picked Juana Bautista Ortiz who had been hit by an automobile. There was blood all over her body. He offered to bring her to the hospital and brought her in the car driven by the defendant.

Belén Ortiz identified the body of the old woman and Dr. Luis M. Graulau, on October 7, between two and three o'clock in the afternoon, performed a post-mortem examination. She had several contusions on her body, one on the back of the left hand, a severe one in the right elbow and another severe

one in the occipital region. When her skull was opened, it showed a comminuted fracture. The skull was crushed, with abundant hemorrhage. The contusion was due to a very severe blow. The cause of the death was the fracture of the skull and the hemorrhage of the middle meningeal artery. She must have fallen against something hard, sideways; on the right side. She was about ninety years old.

The last witness who testified for the prosecution was Sergeant Víctor Manuel Pizarro, of the Insular Police. He learned of the accident on October 6, 1930, at about 8 o'clock in the evening. The defendant told him voluntarily that he was the person who was driving the car. The witness went with the defendant to the place of the accident, "and he showed me the exact spot where the accident had occurred. I backed the car, turned the lights on, and saw on the left side of the road the traces left by the automobile that he had driven shortly before from Ponce to Peñuelas. I measured the distance with a cane: the distance from the spot where the automobile began to make use of the brakes, to the corner or wall of a house occupied by a family named Cuprill, and there were traces of blood there. I asked Benjamín what was that, and he said it was the blood of the old woman with whom he had had the accident. Then I measured and estimated that there was a distance of from 25 to 30 meters; at the place where the car began to use the brakes, the prints of the tires to the corner of the house of Cuprill and the blood traces... I personally noticed... Was the chauffeur there? He was. Besides using the bright lights of the car, I was carrying a flash light in order to determine whether or not that was blood, and from the place where I saw the blood to the place where the car stopped there was a distance of fifteen meters, more or less. The traces of blood were rather to the left, from Ponce to Peñuelas, than to the right, the road being in that place somewhat wide and straight."

When the evidence for the government ended, the defendant, through his attorney, moved for a nonsuit. The judge heard his arguments and overruled the motion.

The evidence for the defense consisted in the testimoy of Enrique Chardón, Gerardo Arce, and the defendant himself. Chardón stated:

"That day, while we were going along, a woman came out carrying a tin can to fetch some water, and from fifteen to twenty meters before the car reached her, the driver blew the horn and the woman stood on the center of the road. Upon reaching the center of the road and while the woman was attempting to cross it, the driver swerved to the right to avoid hitting her, and when he was at a distance of five or six meters from the woman, he swerved to the left to avoid hitting her and struck the stairs of Mr. Curpill's house which was located in front of the race-course. The car. The left front wheel of the car. And with the sewer of the house. And the rear mudguard of the car hit the tin can that the woman was carrying. In my opinion the car was running at a speed of twelve or fifteen miles. It stopped at a distance of eight or ten meters."

Arce testified that the car was running at a speed of fifteen or twenty miles per hour and that it blew the horn. He describes the accident thus:

"It happens that this man (the chauffeur) was traveling on the right side; the woman was crossing from the right to the left, and then he blew the horn and the woman became confused and turned back and when the driver swerved the car to the left the woman also turned to the left, and then when the car was going like this, it hit with the right rear mudguard the tin can that she was carrying; then she fell to the ground and the car traveled five or six feet more; then he drove it a little further so as to park it on one side of the road. Yes, sir, he struck the stairs of a house; of a house situated to the left."

The defendant testified as follows:

"I have driven automobiles for about three years. I have driven Hudson, Buick, Chevrolet, Cadillac, Nash, and Dodge cars. I am seventeen or eighteen years old. While I was traveling from here to there, towards the house of Enrique Chardón, from Ponce to Peñuelas, in front of the race-track (*hipódromo*), an old woman was

coming out and while she was crossing from the right to the left side of the road, I saw her come out and I blew the horn; she stood in the middle of the road and while I was trying to swerve to the right she turned to the right also; when I noticed that the car was going to hit her, I turned the steering-wheel to the left, in such a manner that I hit a wall just to avoid hitting her, but the right rear mudguard was somewhat bent and struck a tin can that she was carrying. As the car came to a stop across the road, something like this, I had to drive a little further to allow other cars to pass. The car stopped something like this, immediately, across the road, and I had to drive it further on in order to allow other cars to pass, because I swerved too far to the left and the car came to a stop across the road.''

The road was straight and rather wide. The old woman had reached or was near the center of the road. She could have been seen on time to avoid the accident. Not only from the evidence for the prosecution, in spite of what the first witness said, but also from that for the defendant himself, it may be inferred that the car was traveling on the left side and so fast that it could not stop on time or the defendant was driving so carelessly that he did not notice the woman who was crossing the road or having seen her, he was so unskillful that he did not know how to avoid injuring her. This is not the case of a person who suddenly appears on the highway when it is impossible to avoid colliding with such person.

The judgment appealed from will be affirmed.

Mr. Justice Aldrey and Mr. Justice Córdova Dávila dissented.

MR. JUSTICE WOLF, concurring.

There was nothing in the opinion of the Court from which I differed, but I wanted to clarify, so far as I could, the reasons why the jury had the right to believe that the defendant was travelling on the left side of the road going from Ponce to Peñuelas.

This was a case where the defendant was charged with negligently driving an automobile, and the negligence consisted principally, according to the government, in driving on

the left side of the highway and at a high speed. The defendant took the stand and insisted that he was driving on the right side of the road. There was only one witness for the government who actually saw the accident, and from the typewritten records his testimony is not completely clear. The defendant was going from Ponce to Peñuelas. The witness was coming from an opposite direction. Although early in his examination the witness spoke of the automobile turning to its right (*a su derecha*), a little later he said that the defendant was driving to the right, which meant as the jury could infer the right-hand side of the highway from the standpoint of the witness as a pedestrian. Also he said that the deceased crossed from the left, which likewise meant from the left of the witness, because the fact is that she did cross from the right-hand side of the road going from Ponce to Peñuelas.

In other words, the one clear fact in this case is that the deceased crossed from the right side of the road to the left from the standpoint of a person going from Ponce to Peñuelas and that she was struck at the left side of the road. The witness was subsequently examined and cross-examined, and it is almost impossible to say exactly what he meant when in his answer he sometimes said "right" or "left."

While from the mere typewritten record the testimony of the eyewitness is a little confusing at times, his said declaration indicated that the defendant was traveling on the left side of the road going from Ponce to Peñuelas. Likewise the witness was asked to state things involved in left or right from the standpoint of the courtroom or the standpoint of his questioner, or by pointing, and the jury better than anybody else would be able to infer from the manner of his answers, his gestures, and his position what the words "right" or "left" meant. The judge also heard the evidence and evidently thought, to judge by the instructions, that there was evidence tending to show that the defendant was traveling on the left side of the road. Under these circumstances,

the appellant does not convince me that the jury did not have a right to believe from the evidence that he was traveling on the left-hand side of the road.